IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 15-cv-01040-CBS

LISA J. RIVERA,
     Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,
     Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This civil action comes before the court pursuant to Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-33 and 1381-1383c, for review of the Commissioner of Social Security's final decision denying Ms. Rivera's application for Supplemental Security Income ("SSI") and Social Security Disability Income ("SSDI") benefits.  Pursuant to the Order of Reference dated December 15, 2015, this civil action was referred to the Magistrate Judge "for disposition" pursuant to Title 28 U.S.C. § 636(c) and D.C. COLO. LCivR 72.2(e).  (See Doc. # 25).  The court has reviewed the Complaint, Defendant's Answer, Plaintiff's Opening Brief, Defendant's Response Brief, Plaintiff's Reply Brief, the administrative record, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.     Procedural History

Ms. Rivera protectively filed applications for SSDI and SSI benefits on March 11, 2011. [1] [2]  (See Administrative Record ("Tr.") (Doc. # 10) at 196-210).  She claimed that she

---

[1] SSDI pays benefits to people with disabilities who have worked and paid Social Security taxes on their earnings.  SSI pays benefits to people with disabilities whose income and resources are below

became disabled on July 15, 2010.  (Tr. 198, 205).  Her claims were denied on July 26, 2011

and she requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. 124-125, 127-

132, 134-135).  ALJ Randi E. Lappin held a hearing on October 3, 2012.  (Tr. 51-101).  Ms.

Rivera was represented by counsel and testified at the hearing.  (*Id.*).  Robert E. Pelc testified at

the hearing as a psychiatric expert.  (Tr. 59-65, 172-176).  Deborah Christianson testified at the

hearing as a Vocational Expert ("VE").  (Tr. 85-97, 170).  The ALJ issued her written decision on

December 13, 2012, concluding that Ms. Rivera was not disabled within the meaning of the Act.

(Tr. 23-40).  On January 17, 2013, Ms. Rivera sought review of the ALJ's decision.  (Tr. 21-22).

The Appeals Council denied her request for review.  (Tr. 17-19).  Ms. Rivera sought two

extensions of time to commence a civil action and filed this civil action on May 17, 2015.  (*See*

Doc. # 1).  The court has jurisdiction to review the final decision of the Commissioner.  42

U.S.C. § 405(g).


II.    Standard of Review

        In reviewing the Commissioner's final decision, the court must "closely examine the

record as a whole to determine whether the . . . decision is supported by substantial evidence

and adheres to applicable legal standards."  *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996)

(internal quotation marks and citation omitted).  *See also Williams v. Bowen*, 844 F.2d 748, 750

(10th Cir. 1988) (court "must determine whether the . . . decision of nondisability, . . . is

---

set limits.  Benefits payable under Title II (SSDI) are based on earnings history and are generally higher than those for Title XVI (SSI).  There are also restrictions and exclusions attached to Title XVI that are not attached to Title II.  Some people with disabilities receive both SSDI and SSI benefits because their SSDI benefits are below the SSI payment level.  Regulations for Title II are found at 20 C.F.R. §404; those for Title XVI are found at 20 C.F.R. §416.

[2] To qualify as an effective claim, an application for SSI benefits must be submitted on a prescribed form. 20 C.F.R. § 404.610. However, a written statement indicating a person's intent to claim benefits can, if it meets certain requirements, establish a protective filing date. Id. § 404.630.

supported by substantial evidence, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (internal quotation marks and citation omitted). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court "must affirm . . . if the decision is supported by substantial evidence." *Eggleston v. Bowen*, 851 F.2d 1244, 1246 (10th Cir. 1988) (citing 42 U.S.C. § 405(g)). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988). The court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001), *as amended on denial of reh'g* (April 5, 2002). *See also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (internal quotation marks and citation omitted); *Mounts v. Astrue*, No. 11-1172, 479 F. App'x 860, 867 (10th Cir. May 9, 2012) (court cannot reweigh the evidence and come to a different conclusion than the ALJ) (citation omitted).

III.   Analysis

It is a social security claimant's burden to prove she is disabled. *Bradley v. Colvin,* No. 15-6137, 2016 WL 1019214, at * 1 (10th Cir. March 15, 2016) (citation omitted). An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The

Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. *See Williams*, 844 F.2d at 750-52 (describing the five steps in detail). "The claimant bears the burden of proof through step four of the analysis." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has severe impairments, and whether the severity of his impairments meets or equals the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). *Id.* at 750–51.

If a claimant's impairment does not meet or equal a listed impairment, the evaluation proceeds to step four, where the Commissioner assesses a claimant's Residual Functional Capacity (RFC), 20 C.F.R. §§ 404.1520(e), and the claimant must establish that he does not retain the RFC to perform his past relevant work. *Pipkins v. Colvin*, No. CIV-14-136-RAW-KEW, 2015 WL 3618281, at *1, n. 1 (E.D. Okla. June 9, 2015). "A claimant's RFC to do work is what the claimant is still functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. At step four of the five-step analysis, "a claimant's RFC is measured against the physical and mental demands of the claimant's past relevant work to determine whether the claimant can resume such work." *Barnes v. Colvin*, No. 14-1341, 2015 WL 3775669, at *2 (10th Cir. June 18, 2015) (internal quotation marks omitted) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir.1996) (noting that the step-four analysis includes three phases: (1) "evaluat[ing] a claimant's physical and mental [RFC]"; (2) "determin[ing] the physical and mental demands of the

claimant's past relevant work"; and (3) ascertaining "whether the claimant has the ability to meet the job demands found in phase two despite the [RFC] found in phase one.")).

If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five the existence of a significant number of jobs in the national economy that a claimant can perform given his RFC, age, education, and work experience.  *Neilson*, 992 F.2d at 1120.

> . . . The decision maker first determines the type of work, based on physical exertion (strength) requirements, that the claimant has the RFC to perform.  In this context, work existing in the economy is classified as sedentary, light, medium, heavy, and very heavy.  To determine the claimant's "RFC category," the decision maker assesses a claimant's physical abilities and, consequently, takes into account the claimant's exertional limitations (i.e., limitations in meeting the strength requirements of work).
>
> . . . If a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing.
>
> . . . The decision maker must then consider all relevant facts to determine whether the claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations. . . .
>
> Nonexertional limitations may include or stem from sensory impairments; epilepsy; mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain. . . .

*Williams*, 844 F.2d at 751-52. (citations omitted).  The Commissioner can meet the burden of showing that there is other work in significant numbers in the national economy that claimant can perform by the testimony of a VE.  *Tackett v. Apfel*, 180 F.3d 1094, 1098–1099, 1101 (9th Cir.1999).  "Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work."  *Pipkins v. Colvin*, 2015 WL 3618281, at *1, n.1.

The ALJ determined that Ms. Rivera: (1) had not engaged in substantial gainful activity since the alleged onset date of disability, July 15, 2010, (2) had as severe impairments "depression, anxiety, history of polysubstances dependence (in apparent remission), thoracic degenerative joint disease and asthma," and (3) did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in Title 20, Chapter III, Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).  (Tr. 28-29).  The ALJ determined that Ms. Rivera had the RFC to perform light work as defined in 20 CFR §§ 404.1567(b) and 416.967(b) with the following limitations:

> The claimant remains able to lift, carry, push, and pull less than 10 pounds frequently and up to 20 pounds occasionally;
>
> She can sit for a total of up to 6 hours out of an 8-hour day, but for not more than 30 minutes without interruption, after which she requires the opportunity to stand and stretch briefly (1-2 minutes) without leaving the workstation;
>
> She can stand and/or walk for a combined total of up to 6 hours out of an 8-hour day, but  for no more than 20 minutes without interruption, after which she requires the opportunity to sit for up to 5 minutes;
>
> The claimant can frequently balance; occasionally stoop, crouch, kneel, crawl, and climb ramps and stairs; and never climb ladders, ropes and scaffolds;
>
> She cannot work safely at unprotected heights or around dangerous machinery that might require agility in order to evade;
>
> She can tolerate no more than occasional exposure to extreme cold or excessive amounts of dust or other respiratory irritants;
>
> Mentally, the claimant remains able to understand, remember and carry instructions consistent with work requiring up to 1 month to learn;
>
> She can tolerate no more than occasional interaction with the public, but remains able to interact appropriately with supervisors and coworkers, provided contact is neither frequent nor prolonged.

(Tr. 30).  The ALJ relied on the testimony of the VE to reach her decision at step four that Ms.

Rivera could not perform her past relevant work as a general clerk, accounting clerk,

receptionist, and travel clerk and at step five that there were other jobs existing in the national

economy that she could perform.  (Tr. 38-40).  The ALJ concluded that Ms. Rivera was not

disabled.  (Tr. 40).  Ms. Rivera alleges that (1) the ALJ erred by incorrectly weighing the medical

opinions, and (2) the ALJ's determination at step five was not supported by substantial

evidence.  (*See* Doc. # 15 at 10-16 of 18).


A.      Weight Assigned to Medical Opinions

        Ms. Rivera alleges that the ALJ erred by giving little weight to Dr. Constantine

Tsamasfyros, M.D.'s opinion set forth in the Mental and Physical Residual Functional Capacity

Assessments dated September 21, 2012 (Tr. 378-383, 404-411) and by giving more weight to

the opinions of consultative psychologists Stuart Kutz, PhD and Gilbert Milburn-Westfall, Psy.D.,

state agency psychiatrist Ellen Ryan, M.D., and psychiatric expert Robert E. Pelc, PhD, who

testified at the hearing.  (Tr. 348-353, 422-429).  The ALJ reviewed the record and determined

that Dr. Tsamasfyros's opinion was not well-supported by his own clinical findings, significant

clinical or laboratory abnormalities, Ms. Rivera's activities of daily living, or the other substantial

evidence in the record.  (Tr. 35-36).  "A treating physician's opinion must be given controlling

weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with other substantial evidence in the record."  *Knight ex rel. P.K. v.

Colvin*, 756 F.3d 1171, 1176 (10th Cir. 2014) (internal quotation marks omitted).  *See also

Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) ("An ALJ is required to give

controlling weight to a treating physician's well-supported opinion, so long as it is not

inconsistent with other substantial evidence in the record.") (citations omitted)).  Even if the

treating source opinion is not given controlling weight, it must be weighed using all of the factors

provided in 20 C.F.R. § 404.1527.  *Id.*  An ALJ may disregard a treating physician's opinion if it

is contradicted by other medical evidence or otherwise inconsistent with substantial evidence in

the record.  *Marshall v. Astrue*, No. 08-1189, 315 F. App'x 757, 760 (10th Cir. March 10, 2009).

*See also* 20 C.F.R. § 404.1527(d)(2).

Dr. Tsamasfyros treated Ms. Rivera as her primary care physician between October 3,

2011 and September 21, 2012.  (Tr. 385-392, *see also* Tr. 412-419 (same)).  On September 21,

2012, Dr. Tsamasfyros prepared Mental and Physical Residual Functional Capacity

Assessments.  (Tr. 378-383, 404-411).  He found Ms. Rivera physically able to lift and carry 10

pounds occasionally and less than that frequently, sit 6 hours in an 8-hour workday, stand

and/or walk 6 hours in an 8-hour workday, do all postural maneuvers occasionally, but never

climb ladders, scaffolds or ropes, and that she had no manipulative or communicative

limitations.  (Tr. 405-407).  He found that she should avoid concentrated exposure to cold, heat,

wetness and avoid even moderate exposure to humidity, noise, vibration, respiratory irritants, or

hazards.  (Tr. 408).  This part of the assessment would allow Ms. Rivera to perform a range of

light work, consistent with the ALJ's RFC determination.  Dr. Tsamasfyros next set forth rather

extreme physical limitations, finding that Ms. Rivera would require unscheduled breaks away

from the work station in periods of 15-20 minutes several times per day and need to lie down

every 2 hours, or 25% of the day.  (Tr. 409).

The ALJ determined that Dr. Tsamasfyros's opinion was unsupported by not only his own

treatment records, but also the other medical opinions in the record and Ms. Rivera's own

description of her activities.  "Medical evidence may be discounted if it is internally inconsistent

or inconsistent with other evidence." *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (internal quotation marks omitted).  *See also Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician opinion which was inconsistent with other medical evidence);  *Oldhamv. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (ALJ reasonably discounted physician opinions in light of other evidence of claimant's capabilities).

First, Dr. Tsamasfyros's own records do not contain sufficient objective medical findings to support the limitations he set forth.  *See* 20 C.F.R. § 404.1527(c)(3)(more weight given to an opinion from a medical source who supports his opinion with evidence, "particularly medical signs and laboratory findings").  His evaluation did not reference objective diagnostic or clinical findings that support his conclusion.  The record of Ms. Rivera's treatment by Dr. Tsamasfyros reveals only routine medical care and medication refills beginning in October 2011.  (Tr. 385-392).  While the treatment records note "lumbar spine" strain through 2011, clinical findings were within normal limits and there are no diagnostic findings to support a conclusion of lumbar spine strain.  On March 19, 2012, based on Ms. Rivera's report of pain after falling on her left knee, Dr. Tsamasfyros diagnosed degenerative joint disease and radiculopathy without any associated diagnostic tests or clinical examination findings.  (Tr. 389).  On April 6, 2012, he diagnosed "lumbar spine stenosis" without associated imaging studies.  (*Id.).*  Lumbar spine x-rays on May 22, 2012 were negative.  (Tr. 390).  He also noted a diagnosis of COPD without reference to any lung tests or findings.  (Tr. 390).  When Ms. Rivera complained on July 23, 2012 of back pain into her hip that "comes and goes" and was "worse with heavy lifting," Dr. Tsamasfyros noted "DDD lumbar spine" and "lumbar spine stenosis," in spite of the negative x-ray results.  (Tr. 391, 404, 411).  There is no indication in the record that a recommended MRI was performed.  (Tr. 390, 392).

In his Mental Residual Functional Capacity Assessment, Dr. Tsamasfyros found Ms. Rivera markedly limited in most work-related functional areas based upon her diagnoses and the fact that she had not worked in 4-5 years.  (Tr. 378-380, 403 (same)).  He concluded that Ms. Rivera had several disorders that limited her capacity to "function in society and for gainful employment." (Tr. 380).[3]  "A 'mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms.' " *Lankford v. Colvin*, No. 14-5140, 612 F. App'x 496, 499-500 (10th Cir. May 14, 2015) (quoting 20 C.F.R. §§ 404.1508).  Dr. Tsamasfyros is not a mental health professional and his assessment is not supported by his treatment notes or by any mental status examinations.  (Tr. 57).  *See Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495, 1498 (10th Cir. 1992) (ALJ reasonably gave more weight to opinions of physicians whose evaluations included extensive testing than to the opinion of a treating physician whose opinion was not supported by specific findings);  *Lankford*, 612 F. App'x at 498 (finding medical opinion internally inconsistent because the limitations assessed did not comport with exam findings). Dr. Tsamasfyros prescribed Prozac, clonazepam, and Xanax, apparently based upon Ms. Rivera's self-reported depression, anxiety, and panic attacks, as there is no evidence that Ms. Rivera had any mental health treatment or that he reviewed any mental health records.  (Tr. 385-392).  His notes are conclusory.  For example, he notes a diagnosis of "Bipolar" and "PTSD," which is beyond his medical expertise and based on no evidence other than Ms. Rivera's subjective reports.  "Evidence is not considered substantial . . . if it really constitutes not evidence but mere conclusion." *Buck v. Barnhart*, 238 F. Supp. 2d 1255, 1258 (D. Kan. 2002)

---

[3]  To the extent Dr. Tsamasfyros assessed Ms. Rivera's ability to work, such opinion is not binding, because the determination of a claimant's disability status is reserved to the Commissioner. *Lankford*, 612 F. App'x at 499 (citation omitted).

(citation omitted).  In sum, the minimal clinical examination findings in Dr. Tsamasfyros's treatment notes do not support his opinion.

Nor is Dr. Tsamasfyros's opinion consistent with the other medical evidence in the record.  Ms. Rivera was referred for a consultative psychiatric examination on May 24, 2011 with Stuart L. Kutz, Ph.D.  (Tr. 348-353).  Her descriptions of her physical and mental limitations were vague.  (Tr. 348).  She stated "[p]hysically, I'm not fit to do anything, lifting, concentration, mentally, I get confused a lot lately, real forgetful, can't find my keys."  (Tr. 348).  While she reported frequent panic attacks, she did "not describe clear, actual panic attacks but more some periods of agitation."  (Tr. 349).  While she reported preferring to stay at home, agoraphobia was clearly not present.  (Tr. 349).  She reported hobbies and interests such as crochet, reading, and occasional painting.  (Tr. 349).  There were "no clear suggestions of manic symptoms."  (Tr. 350).  A mental status exam revealed no significant deficiencies.  (Tr. 351-352).  Stuart Kutz diagnosed mild to moderate depressive disorder, post-traumatic stress disorder, history of polysubstance abuse, and suspected ongoing substance abuse and estimated her Global Assessment of Functioning (GAF) score at 58, indicating moderate symptoms.  (Tr. 353).  He opined that Ms. Rivera's "attention/concentration, persistence and pace in task completion, and social adaptation" appeared "moderately impaired at most" and that her "understanding and memory seem perhaps mildly impaired, assuming no substance usage."  (Tr. 353).  The ALJ gave moderate weight to his assessment based upon his experience and expertise, his documentation of his impressions and findings, and the consistency of his conclusions with the evidence as a whole.  (Tr. 35).

On July 8, 2011, state agency psychiatric consultant Ellen Ryan, M.D., reviewed the record and performed a mental residual functional capacity assessment.  (Tr. 108-110, 119-

121).  She found that Ms. Rivera was not significantly limited in the ability to understand, remember, and carry out simple instructions, to perform activities within a schedule, to sustain an ordinary routine without special supervision, or to work in coordination with or in proximity to others without being distracted by them.  (Tr. 108-110, 119-121).  She found her moderately limited in the ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, respond appropriately to changes in the work setting, and get along with coworkers.  (Tr. 108-110, 119-121).  Dr. Ryan concluded that Ms. Rivera could perform work of limited complexity and could respond appropriately to supervision, coworkers, and the public if the contact was neither frequent nor prolonged.  (Tr. 110, 121).  The ALJ assigned moderate weight to Dr. Ryan's conclusions based on her qualifications, her review of the entire record up to that date, the explanation of her reasoning, and the consistency of her conclusions with the other evidence.  (Tr. 37).

Ms. Rivera was referred for an additional consultative psychological examination with Gilbert Milburn-Westfall, Psy.D. on October 24, 2012.  (Tr. 36, 98-100, 422-429).  He concluded that she was only mildly restricted in most work-related mental activities and moderately restricted in understanding, remembering, carrying out, and making judgments related to complex work-related decisions.  (Tr. 422, 429).  He determined that she was moderately restricted in her ability to interact with the public and would function best at a job with limited public contact.  (Tr. 422-423, 429).  The clinical findings from the mental status exam indicated "good cognitive organization and likely a fair ability to maintain focused concentration."  (Tr. 425).  The mental status exam did not support her alleged memory and concentration difficulties.  Gilbert Milburn-Westfall found that she demonstrated "good ability to sustain

focused attention at a task over an extended period of time," although she "would do best at simple, repetitive tasks" and likely could "complete a normal workday without interruption from psychiatric conditions." (Tr. 429). She "was able to communicate effectively and she had no problems with comprehension and tracking throughout the interview." (Tr. 427). He noted that Ms. Rivera rated her depression at an 8 of 10, which was not consistent with her general presentation. (Tr. 427). He found that she "had a rather histrionic presentation and appeared to exaggerate her emotional distress." (Tr. 427). She had no manic symptoms did not have a bipolar disorder. (Tr. 427). The ALJ gave moderate weight to Gilbert Milburn-Westfall's findings and assessment based on his access to all of the medical records and reports, his performance of a thorough history and mental status exam, his explanations of his opinions with specific reference to clinical findings, and the consistency of his opinion with the other evidence. (Tr. 37).

The ALJ also relied on the testimony of the psychiatric expert, Robert Pelc, PhD. (Tr. 37-38). An ALJ may rely upon testimony of a medical expert. *Richardson v. Perales*, 402 U.S. 389, 408 (1971). Robert Pelc testified that Ms. Rivera has mild restriction in activities of daily living, moderate restriction in social functioning, and moderate restriction in concentration, persistence or pace. (Tr. 60). He testified that, in the absence of substance use, Ms. Rivera is capable of performing tasks that were slightly more complicated than simple and repetitive and of at least occasional up to frequent interaction with supervisors, co-workers and the public. (Tr. 60-61).[4] There was no evidence indicating an inability to maintain attendance and performance. (Tr. 61). Robert Pelc noted the incongruity between Dr. Tsamasfyros' and Dr. Kutz' assessments. (Tr. 62-63). He noted that Dr. Tsamasfyros's treatment record did not contain

---

[4] Ms. Rivera testified and urinalysis evidence indicated that she is not engaging in illicit drug use. (Tr. 58, 83-84, 98).

objective information such as detailed symptoms, signs, mental status findings, global

assessment of functioning (GAF) scores, or a detailed description of psychiatric history.  (Tr.62-

63).  He noted the absence of testing or objective mental status findings to support Dr.

Tsamasfyros' assessment of Ms. Rivera's alleged short-term memory loss, and that his

assessment was in fact contrary to the mental status findings on formal psychological

examinations.  (Tr. 62).  He acknowledged the presence of diagnoses of depression, bipolar,

and panic attacks, while noting the lack of evidence to support the limitations set forth Dr.

Tsamasfyros' assessment.  (Tr. 63).  Robert Pelc was qualified to express an opinion as to

whether Ms. Rivera's impairments were disabling and articulated plausible underlying reasons

for his opinion in adequate detail.  (Tr. 59-65).  The ALJ found that his conclusions adequately

incorporated Ms. Rivera's subjective allegations.  (Tr. 38).  The ALJ assigned substantial weight

to his opinions and conclusions, based on his expertise, his examination of the entire record, his

participation at the hearing, his references to specific records in support of his conclusions, and

the consistency of his opinions with the evidence as a whole.  (Tr. 38).

        The limitations Dr. Tsamasfyros set forth in his assessment are also inconsistent with Ms.

Rivera's descriptions of her own activities of daily living.  She lives in a subsidized apartment

with her daughter, manages her personal care, does household chores, prepares meals daily,

takes her daughter to and picks her up from school, cares for her cat, helps the homeowner with

yardwork and shoveling, and watches television many hours per day.  (Tr. 261-263, 350, 426).

She occasionally goes shopping and enjoys crocheting, painting, crosswords, and reading.  (Tr.

263-264).  She is able to manage her own finances, go to frequent medical appointments, and

walk 5 blocks.  (Tr. 264-265, 353).  She spends time with her daughter, sees her boyfriend daily,

sees her sister occasionally, and sees a girlfriend once or twice per week.  (Tr. 264, 426).

14

1.     Credibility

Ms. Rivera argues that the ALJ erred in evaluating the credibility of her subjective reports to Dr. Tsamasfyros.  (*See* Doc. # 15 at 13 of 18).  The ALJ concluded that her subjective complaints were not fully credible as to the intensity, persistence, and limiting effects of her symptoms.  (Tr. 34).  "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence in the record, provided the determinations are closely and affirmatively linked to [that] evidence." *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302 (10th Cir. 2011) (internal quotation marks and citation omitted).

The ALJ discounted Ms. Rivera's description of the severity and disabling effect of her symptoms based on the lack of medical evidence to support her reported symptoms and discrepancies between her statements and the medical evidence.  (Tr. 32).  For example, while Ms. Rivera testified that her back pain was constant and rated it eight to nine out of 10 (Tr. 68), imaging in December 2009 showed only mild changes in her mid-spine.  (Tr. 346).  Ms. Rivera reported that she only occasionally drove, but also reported that she took her daughter to school daily (Tr. 348, 350).  She testified that she was unable to stand for more than 20 minutes or sit more than 30-45 minutes (Tr. 68), but also testified that she could perform hours of household chores, read, crochet, and watch up to five hours of television a day.  (Tr. 262-64).  She reported that she had difficulty concentrating, but later reported that her concentration was okay most of the time.  (Tr. 425).  While she testified that she could only lift five to 10 pounds (Tr. 68), she reported to Dr. Tsamasfyros that her back pain "comes and goes" and was worse with

"heavy lifting," implying that she was doing heavy lifting.  (Tr. 391).  She indicated that she

isolated at home and only left for appointments, but also stated that she sees her boyfriend daily

and sees a girlfriend once or twice a week.  (Tr. ).  An ALJ may consider whether there are

conflicts between a claimant's statements and the rest of the evidence when assessing

credibility.  20 C.F.R. § 404.1529(c)(4).  *See also* SSR 96-7p, 1996 WL 374186, at *5 (stating

that one strong indication of the credibility of an individual's statements is their consistency, both

internally and with other information in the case record).  Substantial record evidence supports

the ALJ's credibility determination.  *See Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir.

1992) (noting discrepancies between the claimant's prior statements about his daily routine and

activities and his hearing testimony).


     2.     Duty to Develop the Record

     Ms. Rivera also argues that the ALJ failed in her duty to properly develop the record.

(*See* Doc. # 15 at 13 of 18).  "[A] Social Security disability hearing is a nonadversarial

proceeding, in which the ALJ has a basic duty of inquiry, to inform himself about facts relevant

to his decision and to learn the claimant's own version of those facts."  *Dixon v. Heckler*, 811

F.2d 506, 510 (10th Cir. 1987) (internal quotation marks and citation omitted).  *See also Henrie*

*v. U.S. Dept. Health & Human Services*, 13 F.3d 359, 360–61 (10th Cir. 1993) ("The ALJ has a

basic obligation in every social security case to ensure that an adequate record is developed

during the disability hearing consistent with the issues raised.") (citation omitted).  "The duty is

one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns

the claimant's own version of those facts."  *Henrie*, 13 F.3d at 361 (internal quotation marks,

citations, and brackets omitted).  In determining whether the ALJ has met her obligation to fully

develop the record, "the more important inquiry is whether the ALJ asked sufficient questions to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." *Gibbs v. U.S. Dep't of Health & Human Servs.*, 38 F.3d 1220,  (10th Cir. 1994) (citation omitted).

Ms. Rivera argues that the ALJ should have developed the record further as to her testimony that she had seen a counselor at Addiction Research and Treatment Services ("ARTS"). (*See* Doc. # 15 at 13 of 18, Tr. 66-67).  She argues that the ALJ should have obtained those records.  Ms. Rivera never raised this issue to the ALJ.  *See Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009) (requiring claimant to raise a substantial issue to trigger ALJ's duty to develop the record).  "[W]hen the claimant is represented by counsel at the administrative hearing, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored."  *Cowan v. Astrue*, 552 F.3d 1182, 1188 (10th Cir. 2008) (internal quotation marks and citation omitted).  "[I]n a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development."  *Id.*

Nor is there "need to further develop the record" where, as here, "sufficient information existed for the ALJ to make her disability determination."  *Cowan*, 552 F.3d at 1187.  The record includes examination reports from ARTS dated January 14, 2011 and February 6, 2009.  (Tr. 288-294).  Ms. Rivera testified that she did not continue counseling because her insurance did not cover it.  (Tr. 67).  At the administrative hearing, both the ALJ and Ms. Rivera's counsel questioned her regarding her current condition, alleged impairments, medical treatment, medications, pain, and daily activities.  (Tr. 65-85).  The ALJ thoroughly considered all of the

medical evidence and took testimony from the psychiatric expert.  Ms. Rivera was provided

ample opportunity to present all of her evidence and there was no request from her counsel for

any further development of the record.  There was no need to further develop the record

because sufficient information existed for the ALJ to make her determination.

    In sum, the record reflects that the ALJ considered the medical opinions and gave good

reasons for the weight she assigned them.  The reasons included the specialization or expertise

of the treating source, consistency of the opinion with the objective evidence in the record, and

the extent to which the opinions were based on subjective complaints, all permissible reasons.

*See* 20 C.F.R. § 404.1527(c).  The court finds no error on this issue.


B.    Opinion of VE

    Ms. Rivera contends that the hypothetical posed by the ALJ was erroneous. (*See* Doc. #

15 at 15 of 18).  She argues that "because the ALJ's evaluation of the medical source opinions

was deficient, the VE testimony elicited by hypothetical questions did not precisely relate all of

[her] limitations." (*See id.*).  Ms. Rivera also contends that the evidence does not demonstrate

that other work exists in significant numbers in the national economy that she can do, given her

RFC. (*See* Doc. # 15 at 15 of 18).  She argues that if the ALJ had assigned the proper weight to

Dr. Tsamasfyros's opinion, only two sedentary jobs would remain, leaving too small a number of

jobs that she can perform to satisfy the Commissioner's burden at step five. (*See* Doc. # 15 at

15 of 18).

    At step five, the ALJ must consider vocational factors such as the claimant's age,

education, and past work experience and determine whether the claimant is capable of

performing other jobs existing in significant numbers in the national economy.  *Thompson v.*

18

*Astrue*, 987 F.2d 1482, 1487 (10th Cir. 1993). "An ALJ poses one or more questions, asking the VE to assume a hypothetical individual with specified limitations that the ALJ may or may not ultimately determine to be applicable to the claimant." *Ruth v. Astrue*, No. 09-7101, 369 F. App'x 929, 931 (10th Cir. March 18, 2010). An ALJ is not bound by a VE's testimony in response to a hypothetical which includes limitations that are not accepted as true by the ALJ. *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990). At the hearing, the ALJ posed hypotheticals to the VE that involved all of the aspects of the RFC ultimately adopted by the ALJ. (Tr. 85-97). Ms. Rivera's counsel also questioned the VE. (Tr. 92-97). The court has concluded, above, that the RFC determination was supported by substantial evidence. As the hypothetical question was based on the RFC and the RFC was supported by the record, the court concludes that the ALJ did not err in posing her hypothetical. The ALJ's step five finding, that there were significant jobs in the national economy that Ms. Rivera could perform, is likewise supported by substantial evidence. The court finds no error on this issue.

## IV. Conclusion

The Commissioner's determination that Ms. Rivera is not disabled is "clearly and affirmatively linked . . . to substantial record evidence. . . ." *Wall*, 561 F.3d at 1070 (citation omitted). The Tenth Circuit's "precedents do not require more" and the "limited scope of review precludes [this court] from reweighing the evidence or substituting [its] judgment for that of the" Commissioner. *Id.* (internal quotation marks and citation omitted). The court is satisfied that the ALJ considered all relevant facts and that the record contains substantial evidence from which the Commissioner could properly conclude that Ms. Rivera was not disabled within the meaning of Titles II and XVI of the Social Security Act.

Accordingly, IT IS ORDERED that the Commissioner's final decision is AFFIRMED and this civil action is DISMISSED, with each party to bear her own attorney fees and costs.

DATED at Denver, Colorado, this 1st day of April, 2016.

BY THE COURT:


  s/Craig B. Shaffer
United States Magistrate Judge